**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____  :
                                         :
FINANCIAL RESOURCES FEDERAL              :
CREDIT UNION,                            :
                                         :           Civil Action No. 20-6180
                                         :                 **OPINION**
                          Plaintiff,     :
                                         :
              v.                         :
                                         :
ALLOYA CORPORATE FEDERAL                 :
CREDIT UNION; DIEBOLD                     :
NIXDORF AND DIEBOLD,                      :
INCORPORATED; J.P MORGAN                  :
CHASE BANK, N.A. d/b/a CHASE             :
BANK; LOOMIS ARMORED, INC.;              :
BRINKS COMPANY; DUNBAR                    :
ARMORED,                                  :
                          Defendants.    :
_____  :

**WOLFSON, United States Chief District Judge**:

Before the Court are three separate motions to dismiss plaintiff Financial Resources Federal

Credit Union's ("Financial Resources" or "Plaintiff") Amended Complaint, filed, respectively, by

defendants Diebold Nixdorf, Inc. and Diebold, Incorporated (collectively, "Diebold"); J.P. Morgan

Chase Bank, N.A. ("Chase"); Brink's Company and Brink's, Incorporated, as successor in interest

to Dunbar Armored, Inc.,[1] (Brink's Company and Brink's Incorporated, collectively, "Brink's

Defendants") (Diebold, Chase, Brink's Defendants collectively, "Moving Defendants").[2] Diebold

---

[1]      In 2019, Brink's, Incorporated acquired Dunbar Armored, Inc., and in September of 2019, Dunbar was formally dissolved into Brink's, Incorporated. *See* ECF No. 29, Brinks MTD at 1 n.1.

[2]      There are two additional defendants in this matter: Alloya Corporate Federal Credit Union ("Alloya") which has already been dismissed from this lawsuit, *see* ECF No.6, and Loomis Armored, Inc., which has filed an Answer, but has not moved to dismiss.

also separately moves to transfer this action to the United States District Court for the Northern District of Ohio, based on a contractual forum selection clause.  For the following reasons, Diebold's motion to transfer is granted pursuant to 28 U.S.C. § 1404(a), and this entire matter is transferred to United States District Court for the Northern District of Ohio.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In addressing Moving Defendants' motions to dismiss, this Court must accept the allegations from Plaintiff's Complaint as true.  *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  Thus, the facts recited below are taken from the Complaint and do not represent this Court's factual findings.

Plaintiff Financial Resources is a federally-charted credit union, headquartered in Bridgewater, New Jersey, and a member-bank of Alloya, a federally-chartered corporate federal credit union, headquartered in Naperville, Illinois.  Am. Compl. ¶¶1-3.

 Beginning in or around 2010, Plaintiff entered into a Managed Equipment and Services Agreement (the "Services Agreement") with Diebold, an Ohio corporation that "specializes in the sale, manufacture, installation and service of self-service transaction systems, point-of-sale terminals, physical security products, and software and related services for global financial, retail, and commercial markets,"  for the purpose of, *inter alia*, providing cash delivery and retrieval services for Automated Teller Machines ( "ATMs") owned by Plaintiff.  *Id*. at ¶¶4,8.  Among other things, the Services Agreement provided:

> This agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, excluding the conflicts of laws provisions thereof, and the federal laws of the United States of America applicable thereto. . . .The parties hereby consent and agree to submit to the exclusive jurisdiction of the Federal District Court for the Northern District of Ohio or the State courts of Common

2

>Pleas sitting in Stark or Summit County, Ohio.  The parties mutually acknowledge and agree that they will not raise, in connection with any suit, action or proceeding brought in any of the above referenced Courts, any defense or objection based upon lack of jurisdiction, improper venue, inconvenience of forum or the like.[3]

ECF No. 12-2, Certification of Wilfred P. Coronato, Esq., Ex. A, Section 15.1.

In 2013, Plaintiff also entered into a contractual relationship with Alloya, pursuant to which Alloya would provide the physical cash for use in Plaintiff's ATMs.  Am. Compl. at ¶9.  Pursuant to their agreement, the credit or payment for the ATM cash that Diebold would transport to Plaintiff's ATMs would come from an account maintained by Plaintiff at Alloya (the "Transaction Account").  *Id*. at ¶9.  Plaintiff alleges that Alloya also maintained an account, or accounts, with Chase Bank, which Alloya used to fill cash orders for the ATMs owned and/or operated by Plaintiff.  *Id*. at ¶5.  According to Plaintiff, Alloya would withdraw the money from the Chase account and that cash would be physically delivered to Plaintiff's ATMs by Diebold and/or its cash carrier subcontractors, such as Loomis and the Brink's Defendants.  *Id*. at ¶¶6, 9, 10.  At the time the cash deliveries were made, Diebold or its subcontractors, would also pick up deposits and cash from the ATM.  *Id*. at ¶11.  Then, those deposits were delivered by Diebold, or one of its subcontractors, to Alloya.  *Id*.  After receiving the delivery, Alloya would credit Plaintiff's account in the amount of the delivery.  *Id*.  Plaintiff further alleges that "[u]pon information and belief, the cash would ultimately be returned to the account(s) at [Chase] from which the withdrawals of cash were made."  *Id*. at ¶12.  Beginning on or about May 22, 2014 and through December 22, 2015,

---

[3]     The Services Agreement was not included as an exhibit to Plaintiff's Complaint.  However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).  Diebold provided the Services Agreement as an exhibit to their motion to transfer, and Plaintiff did not object.  Thus, the Court may consider the document on this motion.

however, something allegedly went awry;  Plaintiff avers that it "did not receive proper credits or reconciliation of its . . . Transaction Account via Alloya, at Defendant Chase Bank for cash and cash deposits that were retrieved by Defendant Diebold, or one of its subcontractors, when deliveries were made to Plaintiff's ATMs."  *Id.* at ¶13.  Specifically, Plaintiff alleges that the following transactions are unaccounted for:

- On May 22, 2014 and again on May 26, 2014, FRFCU's records show that it had only one order/replenishment for ATM 42520059. Nevertheless, it was debited (i.e. cash being taken from its account) twice, each time for $60,000 - and was provided with confirmation #4216458 dated 5/22/2014 and confirmation #4226292 dated 5/26/2014.
- On Sept. 25, 2014, FRFCU's records show missing credits/deposits on the deposit pulls of $3,019 and residual removal of $66,400 for ATM 42520002 (totaling $69,419), however, no credits were posted to FRFCU's account for this balancing.
- On December 22, 2014 – FRFCU's account was debited $20,000 for ATM 42520040 and $60,000 for ATM 42520052 – and provided confirmation/transaction #s 6093239 and 6329772– but the cash was never received in these machines, nor were the funds returned to FRFCU's account**.**
- On February 9, 2015 FRFCU was debited $86,000 for - ATM 42520002 and was provided with confirmation #6483048. It was subsequently determined by FRFCU, and confirmed by Diebold that the funds were picked up by Diebold's subcontractor in error and that the funds would be returned. Upon information and belief, the funds were not, however, returned.
- On February 11, 2015, FRFCU was debited $76,000 for ATM 42420014 – and received confirmation/transaction #6494494 however, the funds were never received in FRFCU's machine, nor were the funds returned to FRFCU's account.
- On September 8, 2015, FRFCU was debited $66,000 for ATM 42520028 – and received confirmation #8491672 - however, only $32,000 was replenished to the ATM.
- On December 22, 2015, the sum of $96,000 was debited two times from FRCFU's bank account - with confirmations #9444376 and #95536540 – however ATM 42520015 received only one $96,000 deposit.  There is not a record of the second $96,000 deposit being made to any FRFCU ATM, nor is there a record of said funds being credit back to FRFCU's account.

The amount of those funds totals $503,419.  *Id*. at ¶15.  After discovering the discrepancies, Plaintiff demanded that Diebold and Alloya provide records and account for the missing funds. *Id*. at ¶16.  Neither entity fulfilled Plaintiff's request.  *Id*.

Subsequently, on February 28, 2019, Plaintiff filed the instant Complaint in New Jersey state court, which was removed to this Court by Alloya, asserting a conversion claim against all defendants and seeking an equitable accounting with respect to the missing funds.  *See* Am. Compl., Count One and Two. Thereafter, Moving Defendants filed their respective motions to dismiss.  *See* ECF Nos. 13, 22, 29.  Diebold also moved to transfer this matter, pursuant to 28 U.S.C. § 1404(a), in order to enforce the forum selection clause in the Services Agreement.  *See* ECF No. 12.  Plaintiff opposes all four motions.  Because I grant Diebold's transfer motion, I deny all the motions to dismiss without prejudice.

## II.    STANDARD OF REVIEW

A district court may transfer any civil action to any district where the action might have been brought in the interests of justice and for the convenience of the parties and witnesses.  28 U.S.C. § 1404(a).  The function of Section 1404(a) is "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The transfer decision is usually within "the sound discretion of the trial court."  *Teva Pharmaceuticals USA, Inc. v. Sandoz Inc.*, No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017); *Days Inns Worldwide, Inc. v. RAM Lodging, LLC*, No. 09–2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010); *Cadapult Graphic Sys. v. Tektronix, Inc*., 98 F. Supp. 2d 560, 564 (D.N.J. 2000).  Moreover, where "venue is proper for one defendant but not others, a district court may sever and transfer the claims as to any defendant ... and retain the remainder of the claims."  *High 5 Games, LLC v. Marks*, No. 13-7161,

2019 WL 3761114, at *12 (D.N.J. Aug. 9, 2019); *see also D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110-11 (3d Cir. 2009).  "When the parties have agreed to a valid forum-selection clause," however, the Supreme Court has held that "a district court should ordinarily transfer the case to the forum specified in that clause."  *Atlantic Marine Coast. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 62 (2013).  In such a case, a court must (1) give no weight to the forum preferred by "the party defying the forum-selection clause"; (2) deem the private interests to "weigh entirely in favor of the preselected forum"; and (3) analyze the public interests only.  *Id*. at 63-64.  However, *Atlantic Marine* does not govern where a case includes multiple defendants, only some of whom are bound by the forum selection clause.  *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017).  Rather, where a plaintiff brings the same claims against multiple defendants, but only the plaintiff and some defendants contracted to a specific forum, the Third Circuit has established a four-step analytical framework to determine if the court should retain all claims, transfer all claims, or sever and transfer only the claims subject to the forum selection clause.  *Id*.; *see also In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 69–70 (3d Cir. 2018) (explaining that *Howmedica* "announced an analytical framework to determine how forum selection clauses affect the § 1404(a) transfer analysis where the case involves both 'contracting parties,' *i.e.*, those bound by a forum selection clause and thus subject to the presumption of *Atlantic Marine*, and 'non-contracting parties,' *i.e.*, those not bound by a forum selection clause and whose private interests therefore must still be considered.").

First, "the court assumes that *Atlantic Marine* applies to parties who agreed to forum-selection clauses and that, '[i]n all but the most unusual cases,' claims concerning those parties should be litigated in the fora designated by the clauses."  *Howmedica*, 867 F.3d at 404 (quoting *Atlantic Marine*, 571 U.S. at 66).  Second, a court must analyze "private and public interests

relevant to non-contracting parties, just as when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses." *Id.*; *see also* *J umara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  If the First and Second steps point to the same forum, "then the court should allow the case to proceed in that forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer inquiry ends there."  *Howmedica*, 867 F.3d at 404.  However, " if the Step One and Step Two analyses point different ways," then the court proceeds to Step Three and considers severance.  *Id.*  At the Fourth Step, the court exercises its discretion to determine the appropriate outcome.  *Id.*  The *Howmedica* analysis can be "different and rather complex" depending on the context of the case.  *Ford v. EF Explore America, Inc.*, No. 18-2800, 2018 WL 6050671, at *1, *4 (D.N.J. Nov. 19, 2018).

## III.  DISCUSSION

### a.  Diebold's Motion to Transfer

Diebold seeks to enforce the forum selection clause in the Services Agreement by moving to transfer this matter to the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a).  *See generally* ECF No. 12, Diebold Transfer Mot.  Although they differ regarding the outcome of the analysis, the parties agree that the Third Circuit's framework from *In re Howmedica* governs the instant transfer motion.  ECF No. 26, Diebold Transfer Reply Br. at 5; ECF No. 21, Pl. Transfer Opp at 4-5.

Diebold argues that the existence of an enforceable forum selection clause weighs heavily in favor of transfer and that since "this dispute is primarily centered on the parties' contractual relationship, there is no overriding public interest involved that can overcome the weight of the forum-selection clause."  *Id.* at 4.  Further, Diebold emphasizes that most of the factors either weigh in favor of transfer, or are neutral.  *Id.*  First, Diebold argues that "there exists a presumption

that Plaintiff's claims against Diebold should be litigated in the Northern District of Ohio pursuant to the forum selection clause." *Id*. at 6-7.  Second, Diebold asserts that, transfer is appropriate because the first two steps of the *Howmedica* framework both weigh in favor of transfer, and thus, there is no need to proceed to Step Three. *Id*. at 10.  However, Diebold contends that if the Court finds it necessary to proceed to the third step, severance is appropriate. *Id*.

Plaintiff opposes Diebold's transfer motion arguing that the forum selection clause between it and Diebold "cannot be enforced as the litigation involves defendants who were not parties to the contract." Pl. Transfer Opp. at 3.  Plaintiff argues that with respect to the non-signatory defendants, both their private and the public interest weigh against transfer. *Id*. at 4-5.  Further, Plaintiff argues that severance would be impractical, and thus, this Court should exercise its discretion to retain this case. *Id*. at 9-11.

### A.  Step One: The Forum Selection Clause

Here, the Services Agreement requires the parties to "to submit to the exclusive jurisdiction of the Federal District Court for the Northern District of Ohio or the State courts of Common Pleas sitting in Stark or Summit County, Ohio."  Neither Plaintiff nor Diebold dispute the validity of the forum selection clause, or whether Plaintiff's claims fall within the scope of the clause.  Nor have the parties argued that this is the type of "unusual" case where the forum selection clause should be disregarded. *See Atlantic Marine*, 571 U.S. at 66; *see also Foster v. Chesapeake Ins. Co*., 933 F.2d 1207, 1219 (3d Cir.1991) (Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances," or obtained by "fraud, undue influence, or overweening bargaining power"(internal quotation marks and citation omitted)).  Thus, at Step One, the appropriate venue for the claims between Plaintiff and Diebold, the only signatories to the Services Agreement, and

thus, the only parties bound by the forum selection clause, is the United States District Court for the Northern District of Ohio.[4] However, the other defendants to this action – Chase, the Brink's Defendants, and Loomis Armored, Inc., – are not parties to the Services Agreement. Accordingly I must proceed to Step Two of the *Howmedica* framework and analyze their private and public interests. *Howmedica*, 867 F.3d at 404; s*ee also Sweet Charlie's Franchising, LLC v. Sweet Moo's Rolled Ice Cream, LLC*, No. 19-4618, 2020 WL 3405769, at *4 (E.D. Pa. June 19, 2020) (finding that the forum selection clause should be enforced between the parties to the contract and proceeding to Step 2 of the *Howmedica* framework because the remaining defendants were not bound by the forum selection clause).

### B. Step Two: Private Interests and Public Interests of the Non-Contracting Parties, and Public Interests

At Step Two, the Court "must weigh the private interests relevant to the parties who have not signed any forum-selection clause, in addition to any applicable public interests." *Howmedica*, 867 F.3d at 407; *see also Jumara*, 55 F.3d at 879. If, on balance, this step points to the same forum as Step One, then the Court ends the analysis, and enforces the forum-selection clause. *See Howmedica*, 867 F.3d at 404 ("[I]f the Step One and Step Two analyses point different ways, then the court considers [Step Three]."); *Piazza Family Trust II. v. Ciarrocch*i, No. 17-1704, 2017 WL 5146007, at *7 (E.D. Pa. Nov. 6, 2017) ("Because steps one and two point to different forums, we move to step three."); *Ford*, 2019 WL 3492211, at *6 ("Because steps 1 and 2 favor transfer, I need not carry the analysis any farther.").

### 1. The Private Interest Factors.

---

[4] While the forum selection clause provides that the courts of Common Pleas sitting in Stark or Summit County, Ohio as alternate venues, this court can only transfer this matter to another federal district court.

Under Section 1404(a), a court should consider the following private factors:

(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.,* 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *Jumara*, 55 F.3d at 879) (internal quotations omitted).  I find that all of these factors are largely neutral, and weigh neither for nor against transfer.

Diebold argues that the non-contracting parties' private interests weigh in favor of transfer. Diebold contends that based on the location of the parties, "there is no forum that is convenient to everyone," and the "non-contracting [d]efendants, all of which are from out-of-state, would not suffer any inconvenience from litigating in Ohio."  Diebold Transfer Reply Br. at 7.  In that regard, Diebold notes that none of the non-contracting defendants opposed its transfer motion.  *Id*.  Further, Diebold asserts that the location of the ATMs is immaterial, rather the relevant inquiry is where Diebold's books and records regarding the relevant transactions are located, which is in Ohio.  *Id*. at 7-8.

In response, Plaintiff argues that the private interest factors weigh against transfer because the claims arose in New Jersey, and "[t]he Automated Teller Machines (ATMs) that are material to this matter" as well as "[w]itnesses with knowledge as to these transactions" are located in New Jersey."  Pl. Transfer Opp. at 7.  Moreover, to the extent defendants may have witnesses located elsewhere, Plaintiff asserts that Diebold has "not argue[d] that witnesses would we unavailable in New Jersey or the documents could not be produced in New Jersey." *Id*.

10

Here, the bulk of the private interest factors are either in equipoise or inapplicable.  As an initial matter, Plaintiff's forum preference is inapplicable, because the Court is only required to analyze the private interests of the non-parties to the forum selection clause, *i.e.*, Chase, Loomis, and Brink's Defendants.  *Howmedica*, 867 F.3d at 401("courts at Step Two should consider the private and public interests of the parties who have *not* signed a forum-selection agreement." (emphasis added)).

Further, both the convenience of the non-contracting parties and the witnesses are in equipoise and weigh neither for nor against transfer.  None of the non-contracting defendants are citizens of New Jersey; indeed, the only party with any connection to New Jersey is Plaintiff.  The non-contracting Defendants are purportedly citizens of different states: Chase is a citizen of Ohio, Notice of Removal ¶7; Loomis is a citizen of Texas, *id*. at ¶44; and Brink's Defendants are citizens of Virginia and Maryland, *id*. at ¶¶50, 55.  Thus, regardless of the forum, the non-contracting defendants, other than Chase, would be required to travel either to New Jersey or Ohio in order to participate in the litigation.  Since none of those Defendants have opposed Diebold's motion or represented that they are incapable of doing so, it appears that all of the parties are fully capable of traveling between the relevant states.  Accordingly, this factor is largely neutral, and with respect to Chase, weighs slightly in favor of transfer to Ohio.

The convenience of the witnesses may also be considered, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora."  *Jumara*, 55 F.3d at 879; *see also Days Inns Worldwide, Inc. v. Ram Lodging, LLC*, No. 09-2275, 2010 WL 1540926, at *7 (D.N.J. Apr. 14, 2010) (finding that convenience of witnesses was neutral because "[t]here [was] no evidence that any witnesses for either party would be totally unavailable to testify in either New Jersey or Indiana as opposed to merely being inconvenienced by the distance").  Here, none of the

11

non-contracting defendants has opposed Diebold's motion.  As such, there is no indication that any of those defendants' potential witnesses might be unavailable, or outside the subpoena power of the Ohio district court.  Indeed, if Plaintiff intends to take deposition testimony from one of the non-contracting defendants' employees, who will presumably be critical to proving Plaintiff's claims because they were the individuals with direct access to the allegedly converted funds, Plaintiff would likely be required to travel to defendants' places of business, regardless of the lawsuit's forum.  *See* Fed. R. Civ.  P 45(c)(1) ("a subpoena may command a person to attend a trial, hearing or deposition . . .  within 100 miles of where the person resides, is employed or regularly transacts business in person"); *see also* Fed. R. Civ. P. 45(c)(1)(b)(i) (a subpoena may command a party or a party's officer to attend a trial, hearing or deposition, "within the state where the person resides, is employed, or regularly transacts business in person").  Accordingly, this factor is also in equipoise and weighs neither for nor against transfer.

With respect to where the claims arose, the relevant inquiry for purposes of a transfer motion is where is "the center of gravity of the dispute, its events and transactions." *See Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000).  Aside from identifying Plaintiff's location as New Jersey, the Complaint does not identify the physical locations where the relevant events occurred, such as the contract negotiations between it and Diebold, which Chase branch location the cash was withdrawn from, or where precisely the deposits retrieved from the ATMs were transported.[5]  Further complicating matters, Plaintiff does not know which of the defendants is responsible for the alleged conversion, rendering it difficult to determine where

---

[5]    Indeed, Plaintiff's Complaint does not even identify the location of the ATMs at issue, and only asserts that Plaintiff is a credit union headquartered in Bridgewater, New Jersey.  In its briefing on this motion, however, Plaintiff clarifies that all of its ATMs are located in New Jersey. Pl. Transfer Opp. at 7 ("The [ATMs] that are material to this matter are all located in New Jersey.").

that harm arose.  *See - Lorven Techs., Inc. v. Insight Techs., Inc.*, No. 16-7397, 2017 WL 2670971, at *5 (D.N.J. June 21, 2017) (explaining that when analyzing venue with respect to a conversion claim, under New Jersey law, the focus is where the defendants' refusal to return the allegedly converted property occurred, and thus, "an out-of-state defendant's failure to return items to an in-state plaintiff constitutes an omission that occurs where the defendant is located, not where the plaintiff is located").  Some portion of Plaintiff's claims clearly arose in in New Jersey, where Plaintiff's ATMs are located and were the allegedly converted funds were obtained.  However, some portion of Plaintiff's claims also likely arose in Ohio, where two of the defendants, Chase and Diebold, have their principal places of business.  Indeed, Plaintiff alleges that cash was withdrawn from an account at Chase to fill Plaintiff's ATMs, and that cash was given to Diebold or one of its cash carriers.  Am. Compl. at ¶¶9-10.  Then, while delivering the cash to Plaintiff's ATMs, Diebold, or one of subcontractors, would retrieve the deposits and deliver them to Alloya.  *Id*. at ¶11.  Those deposits would ultimately be returned to Alloya's account at Chase bank.  *Id*. at ¶12.  To the extent Plaintiff's Complaint suggest that Chase may not have appropriately credited its account, the events may have occurred in Ohio, where Chase is located.  Thus, this factor is neutral.

The location of books and records and other physical evidence weighs slightly in favor of New Jersey.  Plaintiff's Complaint seeks an accounting of the missing funds from the defendant entities, and many of the relevant documents are likely located where the majority of the entities have their principal place of business and where they maintain their records.  Given the prevalence of electronically stored information and technological advances, documents or records can be easily moved electronically to different venues, thus the location of the books and records is not dispositive.  *Goldstein v. MGM Grand Hotel & Casino*, No. 15-4173, 2015 WL 9918414, at *4

(D.N.J. Nov. 5, 2015) (finding that the location of books and records did not "weigh[] in favor of, or against, transfer because with the advent of new technological advances, these documents or records can be easily moved electronically to different venues").  However, Plaintiff has represented that all of the relevant ATMs are located in New Jersey.  Defendants may be inclined to examine the ATMs, which, unlike the books and records, cannot easily be transported.  Thus, this factor weighs in favor of New Jersey.

On balance, the private interest factors are largely neutral and do not definitively establish that any one forum is clearly more convenient than another.  In light of their varied citizenship, there is no location which would be convenient for all of the parties, and it appears that the Northern District of Ohio is no more convenient for the non-contracting parties than this Court. However, because some portion of the claims arose in New Jersey, and non-movable physical evidence is located here, the private interest factors weigh slightly in favor of New Jersey as the more convenient forum.

## 2.  The Public Interests Factors

Next, I must analyze the public interest factors to determine whether they offset the "strong presumption in favor of enforcing the forum-selection clauses."  *Howmedica*, 867 F.3d at 403 (quoting *Atlantic Marine*, 571 U.S. at 63).  While there is no exhaustive list of public interest factors, and the analysis is flexible and individualized based on the unique facts of each case, *see Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999), typical factors include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80.

14

Here, Diebold argues that public interest, including the "current state of congestion in [this District]" and the interests of the non-contracting defendants' home states, weighs in favor of transfer.  Diebold Transfer Reply at 8-9.

On the other hand, Plaintiff argues that "familiarity of the trial judge with applicable state law in diversity cases" would weigh against transfer of the matter to Ohio, because New Jersey's substantive law is applicable to this action.  Pl. Transfer Opp. at 8.  Plaintiff further argues that, because New Jersey law is to be applied and the conduct at issue occurred in New Jersey, this state's interest in deciding local controversies at home, also weighs against transfer.  *Id*.

I find that the balance of the public interest factors weighs slightly against transfer, because New Jersey law governs this matter, and New Jersey also has an interest in vindicating a harm to one of its corporate citizens.  As an initial matter, neither party has suggested that a judgment rendered in one forum would not be enforceable in the other and, accordingly, this factor does not weigh in favor of either forum.  *See* Moore's Federal Practice — Civil § 111.13 ("[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other.").

Here, both New Jersey and Ohio have some interest in deciding this case.  Two of the defendants are Ohio entities, and thus, Ohio has a local interest in regulating the conduct of its corporations and individual citizens, which includes defendants Chase and Diebold and their respective employees.  However, New Jersey has a countervailing interest in protecting Plaintiff's interests as Financial Resources is a New Jersey entity.  Indeed, New Jersey has an interest in providing a forum for a business operating in its state to vindicate its rights, particularly where the alleged wrongs may have occurred in the state.  *See Days Inns Worldwide*, No. 09-2275, 2010 WL

15

1540926, at *8 (finding that where two forums had an interest in a dispute, the state which was the "center of gravity" had the "stronger local interest in the outcome").  Further, pursuant to the parties' choice of law provision, this matter is to be governed by New Jersey law.  Accordingly, these factors weigh against transferring venue.

However, the administrative difficulties stemming from court congestion heavily support transferring this matter.  The district of New Jersey has a demonstrably heavier caseload than the Northern District of Ohio.  The most recent U.S. Court's Statistics and Reports indicate that as of March 31, 2019, there were 39,167 pending cases in New Jersey and 5,193 pending in the in the District of Ohio.  *See* U.S. Courts, Table C-1, "U.S. District Courts–Civil Federal Judicial Caseload Statistics,"https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2020/03/31.  The relative congestion of dockets in the two districts suggests that this action is likely to proceed to trial, or otherwise reach its resolution, more efficiently in the Northern District of Ohio than in this Court.  Moreover, this District is facing a judicial emergency as a result of long-standing judicial vacancies, which only further contributes to the court's congestion.  *See Ford*., No. 18-2800, 2019 WL 3492211, at *6 (finding that court congestion weighed in favor transfer because "the Administrative Office of the Courts has declared the District of New Jersey to be in a state of judicial emergency, with weighted filings of 903 cases per judgeship, the second highest in the nation. Of 17 allocated judgeship slots, 6 are vacant.")  Thus, this factor weighs in favor of transfer.

Having reviewed both the private and public interests of the non-signatories to the forum selection clause, I find that the totality of the factors weighs slightly against transferring Plaintiff's claims against Chase, Brink's Defendants, and Loomis Armored, Inc to the Northern District of Ohio.  Because that conclusion conflicts with Step One's presumption that the claims against

Diebold should proceed in Ohio, I must proceed to Step Three and consider the possibility of severance. *See Howmedica*, 867 F.3d at 408.

### C.  Step Three: Threshold Issues Related to Severance

At Step Three, the Court considers threshold issues related to severance such as "the presence of indispensable parties and defects in subject-matter jurisdiction, personal jurisdiction, venue, or joinder." *Howmedica*, 867 F.3d at 408.   In some cases, severance of claims or parties might be clearly warranted "to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects; or to allow for subsequent impleader." *Id*. at 404.  Severance may also be impossible in other situations, "such as when a party is indispensable under Federal Rule of Civil Procedure 19(b)." *Id*. (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572–73 (2004); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 421–22 (3d Cir. 2010)).  "If only one outcome for resolving the transfer motion satisfies the constraints identified at this step, then the court adopts that outcome and the transfer inquiry ends.  But if more than one outcome satisfies the threshold severance constraints, then the court continues to Step Four." *Corsentino v. Meyer's RV Centers LLC*, No. 20-03287, 2020 WL 4199744, at *9 (D.N.J. July 22, 2020)(citing *Howmedica*, 867 F.3d at 404).

Here, the parties' arguments at Step Three only address the practicality of severance. Plaintiff argues that "it would be a waste of resources to splinter the case and have the same facts, witnesses and arguments heard in two different courts" and that it "also impractical to sever the cases because this is a case involving conversion, where comparative fault would be apportioned among the Defendants." Pl. Transfer Opp. at 10.  In response, Diebold contends that any risk of duplicative litigation can be reduced through the use of procedural mechanisms "such as common pre-trial procedures, video depositions, stipulations, etc., which can echo those used by judges in

cases managed pursuant to multidistrict litigation statutes, and which can encompass joint oral argument and bellwether trials if necessary and appropriate." Diebold Transfer Mot. at 10 (quoting *Howmedica*, 867 F.3d at 409).

### 1.  Indispensable Parties

Fed. R. Civ. P. 19(a)(1)(A) provides: "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if…in that person's absence, the court cannot accord complete relief among existing parties."

Plaintiff indirectly suggests that severance is inappropriate because Defendants may be jointly and severally liable where comparative fault is at issue.  However, "the possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic [does not] trigger the application of Rule 19." *Fields v. Volkswagonwerk AG*, 626 F.2d 293, 301 (3d Cir. 1980)  Indeed,  "it is never necessary ... to join a joint tortfeasor as a defendant in an action against other tortfeasors." *Rodin Props.-Shore Mall v. Cushman & Wakefield of Pa.,* 49 F.Supp.2d 709 (D.N.J.1999); *see also* K.J. ex rel. Lowry v. Div. of Youth & Family Servs., 363 F. Supp. 2d 728, 750 (D.N.J. 2005) ("As a matter of law, joint tortfeasors are not indispensable parties. ").  Accordingly, I find that find that no defendant is an indispensable party under Rule 19.

### 2.  Personal Jurisdiction

Here, neither party asserts that transferring this matter would create a defect with respect to personal jurisdiction.  Nor do I independently find that such a defect would exist.  As an initial matter, Diebold is incorporated in Ohio and is plainly subject to personal jurisdiction in that state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (explaining that corporations are subject to general jurisdiction in their place of "incorporation and principal place of business.")  Even if it were not, under the terms of the forum selection clause, Diebold has waived personal jurisdiction

in Ohio.  *See* Coronato Cert.., Ex. A, Section 15.1.("the parties mutually acknowledge and agree that they will not raise, in connection with any suit, action or proceeding brought in any of the above referenced Courts, any defense or objection based upon lack of jurisdiction, improper venue, inconvenience of forum or the like").  Similarly, Chase, one of the non-signatory Defendants, maintains its "main office in the State of Ohio" and is also subject to personal jurisdiction there. Notice of Removal at ¶35.

Whether an Ohio court may exercise personal jurisdiction over Loomis and the Brink's Defendants, is a closer question; unlike Chase and Diebold, those defendants are not subject to general jurisdiction in Ohio.  However, they are both, arguably, subject to specific jurisdiction in Ohio.  *Daimler AG*, 571 U.S. at 127.  Specific jurisdiction exists over a non-resident defendant where the plaintiff's claim "arise[s] out of or relate[s] to the defendant's contacts with the forum." To examine whether specific jurisdiction exists, courts apply a three-part inquiry: (1) Defendant's activities must be purposefully directed at the forum; (2) "[P]laintiff's claim[s] must arise out of or relate to at least one of those specific activities"; and (3) The assertion of jurisdiction must be reasonable or "otherwise comport[ ] with fair play and substantial justice." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotations and citations omitted).  Here, the claims against Loomis and Brinks Defendants both stem directly from their roles as the subcontractors for Diebold, an Ohio entity.  During the events underlying this lawsuit, Loomis and Brink's Defendants were acting at the direction of an Ohio entity, subjecting them to personal jurisdiction in that state.  Loomis and Brink's Defendants knowing involvement with the in-state defendant, Diebold, is sufficient to support the exercise of personal jurisdiction in Ohio with respect to the claims against them, all of which stem from that relationship.  Moreover, personal jurisdiction is

waivable, and the Court presumes, based on Loomis and Brink's Defendants' decision not to oppose this motion, that they would not object to the exercise of personal jurisdiction in Ohio.

### 3. Venue

For the purpose of establishing venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Because all of the defendants are subject to personal jurisdiction in Ohio, they are also subject to venue here. Furthermore, Ohio is where Plaintiff's funds were ultimately transmitted, and from where Diebold directed its subcontractor, thus, "a substantial part of the events or omissions giving rise to the claim[s] occurred" in Ohio. 28 U.S.C. § 1391(b)(2)

In sum, at Step Three, the Court may transfer all or some of Plaintiff's claims without creating a jurisdictional defect, but it also may retain the whole case. Because any outcome satisfies the threshold severance constraints, "in deciding where the whole case should proceed," the Court continues to Step Four. *Howmedica*, 867 F.3d at 404

Having considered venue and personal jurisdiction considerations, it appears that severance is neither clearly warranted nor clearly disallowed therefore, I proceed to Step Four and select the appropriate forum based on a combination of interests.

### D. Step Four

The inquiries at Steps One, Two, and Three of the *Howmedica* analysis present this Court with three options: 1) transfer the entire case to the Northern District of Ohio, 2) retain the entire case, here, in New Jersey, or 3)sever the claims against Diebold and transfer them to the Northern District of Ohio, while retaining the claims against the non-signatories to the forum selection clause. At Step Four, three considerations guide the analysis of which option should be selected:

"efficiency, the non-contracting parties' private interests, and *Atlantic Marine*'s directive that courts should not ... disrupt the parties' settled expectations embodied in forum-selection clauses except when other factors overwhelmingly weigh against enforcing the [forum selection] clause[]." *Howmedica*, 867 F.3d at 409 (internal quotation marks and citation omitted).  The court "can decline to enforce a valid forum selection clause only if [it] determine[s] the strong public interest in upholding the contracting parties' settled expectations is 'overwhelmingly' outweighed by the countervailing interest." *Pieazza Family*, No. 17-1704, 2017 WL 5146007, at *8 (quoting *Howmedica*, 867 F.3d at 408.).

Here, I find that the interest of efficiency is best served by transferring this case, in its entirety, to the Northern District of Ohio.  As an initial matter, severance would constitute a waste of resources and impede judicial efficiency.  Here, Plaintiff has brought the same two claims against all of the parties: conversion and a request for an accounting, which all stem from the same set of facts, and a situation which plainly supports litigating all of the claims in a single district. *See  Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26,(1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").  Critically, Plaintiff's claims against all of the Defendants, except for Chase, stem directly from its contract with Diebold, as all of the other non-signatory defendants are Diebold's subcontractors.  Further, the nature of Plaintiff's allegations are such that the claims against each of the defendants are inextricably intertwined, because Plaintiff allegedly cannot discern whether the funds were taken by Diebold or one of its subcontractors, en-route to the funds' destination or whether the discrepancy is an accounting error by Alloya or Chase, which also supports litigating the claims in tandem.  Moreover, one of the non-signatories to the forum selection clause, Loomis,

has asserted a cross-claim against all of its co-defendants, further supporting the adjudication of all of the claims in a single forum.  *See* ECF No. 35, Loomis Amended Answer.

Further, any prejudice that transfer would create with respect to the private interests of the non-parties to the forum selection clause, is minimal, at best.  Here, as described above the private interests of Loomis, Chase, and Brink's Defendants were largely neutral or in equipoise, and weigh only very slightly against transfer, primarily because a portion of the events giving rise to the claims occurred here and this is where Plaintiff's ATMs are located.  The non-contracting defendants are incorporated and have their principal places of business in various states, including Ohio, not New Jersey.  Regardless of the forum, the non-contracting defendants, other than Chase, would be required to travel either to New Jersey or Ohio in order to participate in the litigation, and New Jersey is no more convenient for them than Ohio.  Diebold's interest in upholding the contracted-for forum selection clause strongly outweighs the minimal interests of the non-contracting Defendants in having this matter heard in New Jersey.  As noted, *supra*, none of those defendants chose to oppose Diebold's motion to transfer this matter.

I recognize that, to a certain degree the "local interest in having localized controversies decided at home" and the application of New Jersey law weigh in favor of maintaining the litigation in this District.  However, as explained, supra, Plaintiff's claims are not wholly a local controversy, and Ohio also has an interest in the adjudication of this dispute.  That said, I find that the public interest in judicial efficiency, particularly in light of the judicial emergency facing this District and "the strong public interest in upholding the contracting parties' settled expectations is [not] overwhelmingly outweighed by the countervailing interests." *Howmedica*, 867 F.3d. at 405 (internal quotation marks and citation omitted); *see also Sweet Charlie's Franchising*, No. 19-4618, 2020 WL 3405769, at *5  (finding that judicial efficiency would be best served by

transfer of entire case, were severance would result in duplicative proceedings and the burden on non-contracting parties was "not enough to overcome the forum selection clause and the resulting strong presumption in favor of the [transferee court].").  Ultimately, granting Diebold's motion to transfer and transferring all of the claims is the best solution because it both honors the forum selection clause, and poses minimal prejudice to the non-contracting parties' private interests. Exercising my discretion under Section 1404(a), I find that the interests of justice are best served by transferring this action to Ohio pursuant to the forum selection clause in the Services Agreement.

Because I find that transfer is warranted, I will not address Diebold, Chase, or Brink's Defendants' respective motions to dismiss for failure to state a claim.  The parties may renew their motions in the Northern District of Ohio.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Transfer is **GRANTED** and this matter is transferred to the United States District Court for the Northern District of Ohio.  Diebold, Chase, and Brink's Defendants' respective motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are all **DENIED** without prejudice, with the right to refile such motions in the transferee court.

Dated: January 27, 2021                                     s/ Freda L. Wolfson

                                                            Freda L. Wolfson
                                                            U.S. Chief  District Judge